

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERLEEN CAMPBELL, Administrator of the Estate of W.C. Campbell, Deceased, <br><br> Plaintiff, <br><br> v. <br><br> COCA-COLA ENTERPRISES, INC. and DIXIE-NARCO, INC., <br><br> Defendants. | Case No. 11 C 1674 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Before the Court is Dixie-Narco, Inc.'s ("Dixie-Narco") Amended Motion for Partial Summary Judgment on Counts III and IV of Plaintiff Erleen Campbell's ("Campbell") Complaint. Dixie-Narco previously filed a Motion for Partial Summary Judgment on Counts III and IV on September 19, 2011. This Motion was denied because Dixie-Narco failed to properly authenticate business records upon which it relied, but Dixie-Narco was given leave to file an amended motion.

A briefing schedule was set regarding Dixie-Narco's instant Motion at an in-court hearing on January 18, 2011. Campbell has failed to file a response to Dixie-Narco's Motion.

## BACKGROUND

The following facts are taken from Dixie-Narco's Amended Local Rule 56.1 Statement of Undisputed Material Facts.[1] Campbell did not file a response to Dixie-

---

[1] Local Rule 56.1(a)(3) requires the party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Local Rule 56.1(b)(3)(B) then requires the nonmoving party to admit or deny each factual statement proffered by the moving party and to concisely designate any

Narco's statement of facts, as required by Local Rule 56.1(b)(3)(B). A litigant's failure to dispute the facts set forth in its opponent's statement in the manner required by Local Rule 56.1 results in those facts' being deemed admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Campbell is the wife of W.C. Campbell. (Dixie-Narco's Amended LR 56.1(a)(3) ¶ 1.) Dixie-Narco is a Delaware corporation with its principal place of business in Williston, South Carolina. (*Id.* ¶ 3.)

On August 26, 2009, W.C. Campbell was working at Ace Coffee Bar, servicing the vending machine (the "Vending Machine"), when he was electrocuted. (*Id.* ¶ 9.) Campbell alleges that the Vending Machine is a model DN501ECC/S11-9, manufactured and sold by Dixie-Narco. (*Id.* ¶ 10.)

Dixie-Narco conducted an investigation into the events. (*Id.* ¶ 12.) Dixie-Narco has attached to its Motion for Summary Judgment the affidavit of James Mathis, Manager for Regulatory Compliance at Crane Merchandising Systems, Inc. ("Crane") (Dkt. No. 54-1 ("Mathis Aff.").) Crane is the successor corporation to Dixie-Narco, Inc., which Crane purchased in 2006. (*Id.* ¶ 3.) Mathis has been employed by Crane as Manager for Regulatory Compliance for five years. (*Id.* ¶ 2.) On June 2, 2011, Mathis went to Ace Coffee Bar, located at 601 East Lake Street, Streamwood, Illinois, and examined the Vending Machine that caused W.C. Campbell's injuries and death. (*Id.* ¶ 6.)

During the course of Mathis's inspection, Mathis identified the Vending Machine as a model DN501ECC/S11-9 vending machine, manufactured and sold by Dixie-Narco.

---

material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005).

(*Id.* ¶ 7.) Mathis further avers that he identified "the Vending Machine as a model DN501ECC/SS11-9 vending machine manufactured and sold by Dixie-Narco [and] further identified the Vending Machine as having serial number 09136468AW." (*Id.* ¶ 7.)

After Mathis's inspection of the Vending Machine, Mathis reviewed the build record for the Vending Machine (the "Build Record"), a copy of which is attached to his affidavit. (*Id.* ¶ 8 and Ex. A.) The build records for Dixie-Narco are made and kept in a computer database by Dixie-Narco in the ordinary course of its business and for the purpose of tracking each vending machine manufactured and sold by Dixie-Narco. (*Id.*) Dixie-Narco creates the build record for each vending machine at the time the vending machine is built, and the build record is updated when the machine is sold by Dixie-Narco. (*Id.*)

The "Serial Number" on the Build Record is listed as 64680913. (*Id.*, Ex. A.) The "Model Number" is listed as 20CC705096. (*Id.*) The "Date Shipped" is listed as 3/30/98, and the "Date Produced" is listed as 3/26/98. (*Id.*) The "Model Description" is listed as DN501ECC/S11-9 COKE. (*Id.*)

The serial number on Dixie-Narco vending machines consists of two elements: the run number and the unit number within the run. (*Id.* ¶ 10.) The run number is the number assigned by Dixie-Narco to a particular model run at the beginning of the manufacturing process. (*Id.*) The unit number identifies where the vending machine falls in the manufacturing process. For example, the Vending Machine at issue in this case is the 913th unit manufactured during model run 6468. (*Id.*)

The serial numbers on Dixie-Narco vending machines are sometimes transposed. (*Id.* ¶ 11.) In the case of the Vending Machine, the serial number is sometimes shown as

64680913AW and at other times as 09136468AW. (*Id.*) The reason for this is because, some years ago, Dixie-Narco went from a paper-product tracking system to a computer-driven inventory and asset tracking system. (*Id.*) The computer system, unlike the paper system, placed the run number first in order to facilitate easier navigation and report generation from the system. (*Id.*) The serial number tags were never changed to reflect the change in the system because the customers, field service, and tech service individuals were already used to seeing the run number after the unit number, and the company did not want to create confusion for these individuals. (*Id.*)

There is another method available to date the Vending Machine, outside of using the serial numbers. (*Id.*) Dixie-Narco uses alpha characters to identify what year and quarter its vending machines are manufactured. (*Id.*) In the case of this Vending Machine, the AW at the end of the serial number represents the 1st quarter of 1998. The "A" represents the 1st quarter of the year and the "W" refers to 1998 as the year of manufacture. (*Id.*)

From the Build Record, Mathis determined that the Vending Machine was built on March 26, 1998, and was shipped to Coca-Cola Bottling Company at 5321 West 122nd Street, Alsip, Illinois, 60803, on March 30, 1998. (*Id.* ¶ 9.)

On February 23, 2011, Campbell filed a Complaint in the Circuit Court of Cook County, Illinois, based on the injuries and death of her husband, W.C. Campbell, after he was electrocuted while servicing a soft-drink vending machine. Campbell filed her Complaint against Defendants, Coca-Cola Enterprises, Inc. ("Coca-Cola") and Dixie-Narco on February 23, 2011. Coca-Cola removed the case to this Court on March 10, 2011, on the basis of diversity jurisdiction. Campbell asserts claims against

Coca-Cola for wrongful death and survival based on a theory of strict products liability (Counts I and II, respectively) and wrongful death and survival based on negligence (Counts V and VI, respectively). Campbell also asserts claims against Dixie-Narco for wrongful death and survival based on a theory of strict products liability (Counts III and IV, respectively) and wrongful death and survival based on negligence (Counts VII and VIII, respectively).

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not sufficient to oppose a motion for summary judgment, nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal citation omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## ANALYSIS

Campbell has failed to respond to Dixie-Narco's Motion. However, when a party moves for summary judgment and the opposing party fails to respond, summary judgment ordinarily cannot be granted by default. Instead, facts are taken as true and it still must be decided if the moving party is entitled to summary judgment based on those facts. *See Nabozny v. Podlesny*, 92 F.3d 446, 457 n.9 (7th Cir. 1996).

Dixie-Narco argues there is no genuine issue of material facts that Campbell's claims based on a strict products liability theory are time-barred. Section 13-213(b) of the Illinois Code of Civil Procedure provides:

> Subject to the provisions of subsections (c) and (d) no product liability action based on any theory or doctrine shall be commenced except within the applicable limitations period and, in any event, within 12 years from the date of first sale, lease or delivery of possession by a seller or 10 years from the date of first sale, lease or delivery of possession to its initial user, consumer, or other non-seller, whichever period expires earlier, of any product unit that is claimed to have injured or damaged the plaintiff, unless the defendant expressly has warranted or promised the product for a longer period and the action is brought within that period.

735 ILCS 5/13-213(b).[2] Therefore, the applicable statutory period of repose is ten years. It is not disputed that Ace Coffee Bar was the initial user or consumer of the Vending Machine.

---

[2] 735 ILCS 5/13-213(d) further provides: Notwithstanding the provisions of subsection (b) and paragraph (2) of subsection (c), if the injury complained of occurs within any of the periods provided by subsection (b) and paragraph (2) of subsection (c), the plaintiff may bring an action within 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, of the existence of the personal injury, death or property damage." Here, the statute of repose accrued on March 30, 1998, when the Vending Machine was delivered to Ace Coffee Bar. As W.C. Campbell was injured on August 26, 2009, his injury did not occur within the 10-year period provided in subsection (b).

There is no genuine issue of material fact that the Vending Machine was manufactured on March 26, 1998, and shipped to Coca-Cola on March 30, 1998. Therefore, the ten-year statutory repose period expired on March 30, 2008. As such, Campbell's Counts III and IV that are based on a strict products liability theory, filed on February 23, 2011, are barred by the applicable ten-year statute of repose. *See Babich v. River Oaks Toyota*, 879 N.E.2d 420, 426 (Ill. App. Ct. 2007) (holding that ten-year statute of repose period applied to car dealership employee's product liability action against office chair manufacturer).

## CONCLUSION

For the reasons set forth above, Dixie-Narco's Motion for Partial Summary Judgment [53] is granted as to Counts III and IV of Campbell's Complaint. Counts III and IV are dismissed with prejudice.

Date: 4-4-12

JOHN W. DARRAH
United States District Court Judge